## SUPREME COURT.

*Commonwealth of Pennsylvania* ⎱
           v.        ⎰ MOTION TO QUASH.
*Nicholas Kosloff.* ⎰

*Tilghman,* Chief Justice.

A consul general is not protected by the law of nations on indictment for a rape.

Jurisdiction of state courts.

The grand inquest for the city and county of Philadelphia, having preferred a bill of indictment for a rape against Nicholas Kosloff, consul-general of his Imperial Majesty the Emperor of Russia, a motion has been made to quash the indictment for want of jurisdiction in this court. Two causes are assigned for our want of jurisdiction. 1st. That the privilege of immunity from criminal prosecutions is conferred on consuls by the law of nations. 2d. That by the constitution and laws of the United States, exclusive jurisdiction in all cases affecting consuls, is vested in the courts of the United States.

1st. It is granted that, by the modern law of nations, ambassadors and other public ministers are, in general, exempt from criminal prosecutions. Perhaps there are some offences, such as an attempt on the life of the sovereign with whom they reside, which would warrant their punishment. But in every thing short of an extreme case, it is more conducive to the peace, and more agreeable to the usage of nations, to send them to their own sovereign, to receive from him the punishment they deserve. It has not been contended that a consul is a public minister; but it is said that a consul general, such as Mr. Kosloff, is prohibited from exercising trade and commerce, and entrusted with important concerns of his sovereign, so nearly resembles a public minister, that he is entitled to some of his prerogatives, and, in particular, to exemption from criminal prosecution. In

considering this case, we must exclude from our view the august personage. to whom allusion was made in the argument. Concerning his high character, and the intimacy of the relations' to be preserved with him, there is but one voice, one wish. These considerations would have their deserved weight in their proper place; but before us, there · is only a naked question of right, in which all nations are equally concerned, for we cannot but see that what is granted as the right of one, must be conceded as the right of all. The law of nations is to be sought for in the usages of nations; in the opinions of approved authors and in treaties, and in the decisions of judges, with regard to the privileges of consuls, there is some difference of opinion among respectable authors. Wicquefort, Bynkershoeck, and Marten, allow to a consul no privilege against suits civil or criminal; and the reason they assign is, that consuls in no manner represent · the person of their sovereign, but are sent for the purpose of assisting his subjects, particularly in matters of commerce, and sometimes of deciding disputes, which may arise between them, by permission of the government in whose diminions they reside. (See Wicquefort l'Ambasdeur, book 1. p. 65., Bynkershoeck *Deforolegatorum*, chap. 10. p. 110. Barbeyrac's translation into French, Marten's Summary Law of Nations, book 4. chap. 3. sec. 8.) Opposed to them is Vattel, who, although he does not assert that a consul is entitled to the privileges of a public minister, in general, is yet of opinion that. from the nature of his functions, " he should be independent of the ordinary criminal justice of the place where he resides, so as not to be molested or imprisoned, unless he himself violates the law of nations by some enormous crime." Vattel, vol. 2. chap. 2. sec. 34. I am not quite sure what is meant by violating the law of nations in this passage. Crimes against the law of nations are sometimes understood to be crimes which all nations agree to punish—such are murder and rape, among all civilized . nations; and if that be the meaning of Vattel, his authority would not exempt the consul from the present prosecution. But what is of more weight than the judgment of authors, however respectable, is the opinion and the practice of our own government, and that of the foreign nations with whom we

have had intercourse. We have had treaties with
France, Spain, Great Britain, Holland, Prussia, and
Sweden, in all of which the subject of consuls has been
introduced, and in not one of which have consuls been
protected from suits civil or criminal. I say nothing
of our treaties with the Barbary powers, because there
are special reasons why all nations, who send consuls to
them, take care to provide expressly for their personal
security. In the treaty with Great Britain, made 1794,
consuls are expressly declared to be subject to punish-
ment by law of the country in which they reside. By
the consular convention with France in 1788, there
is to be full and perfect immunity concerning the chan-
cery and its papers, but the house of the consul is to be no
asylum for persons or effects ; and in our treaties the most
that is stipulated in favour of consuls is, that they shall
respectively enjoy the same prerogatives and powers that
are granted to those of the most favoured nations. Those
treaties afford a strong proof of the usages of nations ; for
it cannot be supposed, that they should have omitted to se-
cure consuls from criminal prosecutions, if. it had been
thought desirable or usual, to afford them that protection.
But there is not wanting more direct proof of the opinion of
our own government : In the " act for the punishment of
certain crimes against the United States," passed April 20,
1790, penalties are inflicted on persons who sue out process,
from any court, against an ambassador or other public
minister ; but the act is silent as to consuls. And, what is
directly to the point, the 9th sec. of the " act to establish
the judicial courts of the United States," passed September
24, 1780, vests the district courts with jurisdiction of of-
fences committed by consuls, in which a punishment
did not exceed 100 dollars, &c. &c. Neither are we
left, on this important subject, without the light of judi-
cial decision. Mr. Ravara, consul from Genoa, was
indicted and convicted of a misdemeanor in the circuit
court of the United States. He was defended by able
counsel, who contended for his privilege, on the autho-
rity of Vattel. But the court decided against him ; and
it is worthy of remark, that C. J. Jay presided, who had
been long employed in a function of a high grade, at the
court of Madrid, and was one of the ministers of the
United States, who negotiated at Paris, the treaty which

established our independence. No person certainly had better opportunities of knowing the usage of nations, or a better capacity of improving those opportunities. From all these considerations, I cannot hesitate in the opinion, that there is nothing in the law of nations which protects the consul general of Russia from this indictment.

2d. A more difficult question remains to be considered : Is the jurisdiction of this court taken away by the constitution and laws of the United States? Before I go into an examination of the constitution and laws, it may not be improper to say a word or two respecting the subject out of which this question arises. An agent of a foreign government, accused of a crime committed in the state of Pennsylvania, claims not an exemption from trial, but the right of being tried by the courts of the United States. His public relations are not with the state of Pennsylvania, but with the government of the United States; and if the emperor of Russia should suppose that he had cause to complain of our treatment of his officer, he must address himself, not to the governor of Pennsylvania, but the president of the United States. But even where there was no cause of complaint, cases may be easily supposed in which the president might think it more conducive to the peace of the nation, to send a foreign agent out of the country, to be punished by his own sovereign, than to inflict punishment on him by our own laws. These considerations are so manifest, that when the people of the United States were about to form a federal government, through which alone they were to maintain an intercourse with foreign nations, it would have seemed a want of common prudence not to commit to that government the management of all affairs respecting the public agents of those nations. Let us now advert to the instrument of our federal union, and we shall soon perceive that the statesmen who framed it were perfectly aware of the importance of placing all foreign public agents, consuls included, under the complete superintendence of the federal government. It was through the judicial power that those persons could principally be affected. Accordingly we find it provided by the 2d sec. of the 3d art. of the constitution, that the judicial power shall extend " to all cases affecting ambassa-

PHIL'A.

Com'th
v.
Kosloff.

dors, other public ministers and consuls:" words more
comprehensive cannot be devised. They include suits
of every kind, civil and criminal. This is not denied
by the attorney general of Pennsylvania; nor, as I under-
stand, is it denied that, by virtue of this provision, con-
gress has a right to declare by law, that in no case, civil
or criminal, should a state court have jurisdiction over a
consul. But it is contended, that until congress does
by law declare so, the state courts have concurrent juris-
diction with the courts of the United States; or, rather,
that in the case before us, the state courts alone have
jurisdiction; because, congress having passed no law de-
fining the crime, or the punishment of rape, the courts
cannot take cognizance of the offence. The constitution
in the 1st sec. of the 3d article, declares in what courts
the judicial power shall be vested, viz. in one supreme
court, and in such inferior courts as the congress may
from time to time ordain and establish. In the second
section, it enumerates the different cases to which the
judicial power shall extend, and then goes on to direct
the distribution of that power among the different courts,
" in all cases affecting ambassadors, other public minis-
ters and consuls, and those in which a state shall be a
party, the supreme court shall have original jurisdiction.
In all the other cases before mentioned, the supreme
court shall have appellate jurisdiction, both as to law
and facts, with such exceptions, and under such restric-
tions as the congress shall make." Thus the judicial
power, extending to all cases affecting consuls, being
vested in the supreme court, it follows, that as soon as
the supreme court was organized by law, it became im-
mediately vested with original jurisdiction in every case
in which a consul might be affected. But was this an
exclusive jurisdiction? The opinion of the supreme
court, in Marbury v. Madison, 1 Cranch, 137. goes far
towards establishing the principle of exclusive jurisdic-
tion. The point decided in that case was, that where the
constitution had not vested the supreme court with ap-
pellate jurisdiction, it was not in the power of congress
to give appellate jurisdiction. This will appear from
the following extract from that opinion. " If congress re-
mains at liberty to give this court appellate jurisdiction
where the constitution has declared their jurisdiction

shall be original; and original jurisdiction where the constitution has declared it shall be appellate, the distribution of jurisdiction made in the constitution, is form without substance. Affirmative words are often, in their operation, negative of other objects than those affirmed, and, in this case, a negative or exclusive sense, must be given to them, or they have no operation at all. If the solicitude of the convention with respect to our peace with foreign powers, induced a provision that the supreme court should take original jurisdiction in cases which might be supposed to affect them; yet the clause would have proceeded no farther than to provide for such cases, if no farther restriction on the power of congress had been intended. That they should have appellate jurisdiction in all other cases, with such exceptions as congress might make, is no restriction, unless the words be deemed exclusive of original jurisdiction."

Now, taking this to be the construction of the constitution, all those parts of the "act to establish the judicial courts of the United States," which vest jurisdiction in cases affecting consuls, in the district or circuit courts, would be unconstitutional and void; and if it was intended by the constitution that no inferior court of the United States should have jurisdiction, it cannot be supposed that the state court was to have it, because there are much stronger reasons for denying it to the state courts, than to the inferior courts of the United States. It will be perceived that the principle shakes the decision, in the case of Bavara, who was convicted in the circuit court, though not that part of the decision which respects the privileges of a consul. But if the two cases cannot be reconciled, the circuit court must give way. Supposing, however, for argument sake, that the constitution does not vest the supreme court with exclusive jurisdiction, let us see whether congress has not excluded the state courts by the judiciary act, passed 24th September, 1789. By the 9th section, the district courts are vested, exclusively of the courts of the several states, with cognizance of "all crimes and offences that shall be cognizable under the authority of the United States, committed within their respective districts, where no other punishment than whipping, not exceeding thirty stripes, a fine not exceeding 100 dollars, or a term of

PHIL'A.

Com'th
v.
Kosloff.

imprisonment not exceeding six months, is to be inflict-
ed." Consuls are embraced in this jurisdiction, as
plainly appears by considering the whole section, and
as was declared by the court in Manhardt v. Soderstrom.
(1 Bin. 138.) Then comes the 11th section, by which
the circuit courts are vested with exclusive cognizance of
" all crimes and offences cognizable under the authority
of the United States, except where the said act otherwise
provides, or the laws of the United States shall otherwise
direct, concurrent jurisdiction with the district courts, of
the crimes and offences cognizable therein." Does not
this exclude the state courts from jurisdiction in the case
of consuls ?

The only argument attempted, or that can be devised,
in support of the negative, is, that no offence is cogniza-
ble in any court of the United States, until congress has
declared it to be an offence, and prescribed the punish-
ment. This is the only consideration which ever had
the least weight in my mind; but upon mature reflec-
tion, I am unable to deny that the courts of the United
States can take cognizance, when I find it written in the
constitution, that the supreme court shall have jurisdic-
tion in all cases affecting a consul. Is he not affected in
criminal cases much more than in civil ? How then can
I say that the supreme court has no jurisdiction? But
how, or by what law is he to be punished, in case of con-
viction ? Shall he be punished by the law of Pennsylva-
nia, where the offence was committed, in as much as there
is no other express law which reaches this case, and it is
on account of the person only, that jurisdiction is given to
the courts of the United States? Does the 34th section
of the judiciary act apply to the punishment of offences,
by which it is enacted, " that the laws of the several
states, except where the constitution, treaties, or statutes
of the United States shall otherwise require or provide,
shall be regarded as rules of decision in trials at common,
law in the courts of the United States, in cases where they
apply ?" May a person convicted in a court of the United
States, of a crime of the highest grade, concerning which
congress has made no provision, be punished according to
the opinion of Judge Story, in the United States v. Coo-
lidge, by fine and imprisonment, on the principles of
common law ? 1 Gallison's Rep. 488. Or is the consti-

tution to be so construed as to exclude the jurisdiction of all inferior courts, and yet suffer the authority of the supreme court to lie dormant, until called into action by a law which shall form a criminal code on the subject of consuls? These are the questions which may embarrass those who have to answer them; but are not necessary to be answered here. No embarrassment, however, could equal that into which this court would be thrown, should it determine that no court of the United States has jurisdiction in a case which affects a consul in every thing short of life, when the constitution declares that the supreme court shall have jurisdiction in all cases concerning him. Upon full consideration, I am of opinion that the indictment should be quashed, because this court has no jurisdiction.

Justice Brackenridge concurred on the second ground; but declined giving any opinion on the first, as he did not deem it necessary.